No. 82-120

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

LOUIS J. JARUSSI,

        Plaintiff and Respondent,

   -vs-

THE BOARD OF TRUSTEES OF SCHOOL DIST.
NO. 28, LAKE COUNTY, MONT., said Board
consisting of LILLIAN STRONG, et al.,

        Defendants and Appellants.

Appeal from:  District Court of the Fourth Judicial District,
In and for the County of Lake, The Honorable
Douglas G. Harkin, Judge presiding.

Counsel of Record:

    For Appellants:

        John Frederick, County Attorney, Polson, Montana

    For Respondents:

        Jon E. Ellingson and Nancy K. Moe, Missoula,
Montana

Submitted on Briefs:  March 10, 1983

Decided:  May 19, 1983

Filed:  **MAY 19 1983**

*Ethel M. Harrison*

—————————————————————
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

A teacher recovered a judgment against the School Board for its violation of Montana's Open Meeting Law, wrongful termination of employment, and damages of $19,400, attorney fees and costs. The School Board appeals.

Plaintiff is Louie J. Jarussi, a nontenured high school principal and teacher in St. Ignatius, Montana. Defendant is the Board of Trustees of School District No. 28, Lake County.

Jarussi was first employed by the Board for the 1976-77 school year. During the 1977-78 school year, he was employed as a fulltime principal and Spanish teacher at a salary of $18,486. The record indicates he was an exceptional teacher and principal.

On February 1, 1978, Jarussi met with the Board and requested a salary of $21,000 for the following school year. The Board closed the meeting apparently to discuss Jarussi's request. Jarussi claimed he objected to the closure, but no such action was recorded in the minutes of the meeting. The Board thereafter returned to open session and offered Jarussi $19,200, the offer to be accepted by March 8.

Jarussi immediately contacted legal counsel to proceed against the Board for improperly closing the meeting. The Board's presiding officer expressed the Board's anger to Jarussi over his complaint and indicated it would not help his employment situation.

Jarussi claimed he verbally accepted the offer of employment on March 8. The Board disputed this, and no acceptance is noted in the minutes.

The preliminary budget, including a provision for

-2-

Jarussi's position, was approved on March 15.

The Board met again on March 29. Part of the meeting was again closed without a determination that the demand of individual privacy clearly exceeded the merits of public disclosure. During the closure of the meeting the Board unanimously decided to withdraw its offer of employment to Jarussi. Thereafter, the meeting was opened, and a formal motion was approved withdrawing the salary increase previously offered Jarussi.

The Board never officially nor specifically eliminated Jarussi's position according to the Board's records.

On April 7, Jarussi demanded a statement of termination by the Board. The Board served notice of termination on April 21.

On April 28, Jarussi filed suit against the Board in three counts: (1) for violation of Montana's Open Meeting Law adversely affecting his rights and seeking to have the Board's decisions declared void; (2) failure to properly terminate him in violation of statute; and, (3) retaliation against him for exercising his rights under Montana's Open Meeting Law by withdrawal of the offer of employment.

In June Jarussi requested release from his existing contract of employment to seek other employment. He accepted a position in Alaska and reported to work in July.

Following a jury trial, judgment was entered awarding Jarussi $16,500 for his loss in selling his property, and $2,900 moving expenses. The judgment also included a determination by the District Court without a jury that the Board had violated Montana's Open Meeting Law and voided the decision of the Board withdrawing its previous offer of

employment to Jarussi. The judgment included an award of attorney fees and costs. Following denial of its motion for a new trial, the Board appeals.

Three issues are raised on appeal:

1. Was Jarussi required to exhaust his administrative remedies before filing suit in District Court?

2. Should a new trial have been granted because excessive damages were awarded under the influence of passion or prejudice?

3. Did the School Board violate Montana's Open Meeting Law?

The Board contends that Jarussi was required to exhaust his administrative remedies by appealing the Board's decision to the county superintendent of schools before seeking judicial relief in the courts, citing section 20-3-210, MCA, giving the county superintendent sole jurisdiction to decide this controversy.

We hold that Jarussi was not required to exhaust administrative remedies within the educational apparatus before filing suit in the District Court.

The District Court is expressly granted jurisdiction to void any decision in violation of Montana's Open Meeting Law. The pertinent statute provides:

> "Voidability. Any decision made in violation of 2-3-203 [statutory implementation of Montana's Open Meeting Law] may be declared void by a district court having jurisdiction. A suit to void any such decision must be commenced within 30 days of the decision." (Bracketed descriptive phrase added.) Section 2-3-213, MCA.

We have previously upheld the jurisdiction of the District Court in actions to enforce Montana's Open Meeting

-4-

Law. Board of Trustees, Huntley Project School Dist. 24 v. Board of County Commissioners, Yellowstone County (1980), ____ Mont. ____, 606 P.2d 1069, 38 St.Rep. 175. Further, statutory time constraints negate exhaustion of administrative remedies before the county superintendent of schools and the State Superintendent of Public Instruction.

Moreover, the exhaustion doctrine does not apply to constitutional issues. Davies Warehouse Co. v. Bowles (1944), 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635; 1 Am.Jur.2d Administrative Law, § 185 at 484-490. Here, Jarussi claims violation of his constitutional right to observe the deliberations of the School Board under the right to know provisions of the Montana Constitution, Article II, Section 9. Constitutional questions are properly decided by a judicial body, not an administrative official, under the constitutional principle of separation of powers. Art. III, Section 1, 1972 Mont. Const.

Next, the Board contends that the jury awarded Jarussi excessive damages under the influence of passion and prejudice. The Board argues that the jury exercised no critical judgment in its award of economic damages to Jarussi, disregarded the disparity between his increased salary in Alaska compared to his salary in Montana, and had to "speculate wildly" concerning cost of living differences between Alaska and Montana, and that Jarussi's claim of economic losses lacked specificity. The Board points out that the jury award for loss on the sale of Jarussi's property was the midpoint in the range of Jarussi's testimony; awarded him actual costs including travel and lodging expenses for trial, all attorney fees and all court costs; that the

minimal period of deliberation and the unanimous verdict indicate a passion and prejudice to punish the Board; and that the jury apparently disregarded the instruction that it could not award damages for pain and suffering, loss of consortium, mental distress, loss of reputation and could only award tangible pecuniary losses.

It is important to note that the jury awarded damages in this case for wrongful termination of Jarussi's employment, not for violation of Montana's Open Meeting Law. The damage award must be reasonable. Section 27-1-302, MCA. The damages must be supported by substantial evidence. Johnson v. Murray (1982), ____ Mont. ____, 656 P.2d 170, 39 St.Rep. 2257; Bjerum v. Wieber (1967), 149 Mont. 375, 427 P.2d 62. The law requires only that the trier of fact exercise calm and reasonable judgment and the amount of the award rests of necessity in the sound discretion of the trier of fact. Johnson v. Murray, supra. When there is strong evidence of the fact of damage, defendant should not escape liability because the amount of damage cannot be proven with precision. Johnson v. Murray, supra, citing Winsness v. M.J. Conoco Distributors (Utah 1979), 593 P.2d 1303.

Here Jarussi testified that he lost between $16,000 and $17,000 when he had to hastily sell most of his personal property in view of his move to Alaska. He testified he held a garage sale and that "the move cleaned me out." He kept a record of sales of the various items and what he originally paid for them, which was not introduced into evidence. He testified that his actual moving costs were $2,902.50. This testimony was not disputed or questioned on cross-examination. No evidence was presented by the Board

-6-

refuting Jarussi's claimed damages.

We hold the damages awarded were supported by substantial evidence and the jury exercised reasonable judgment in determining the amount of the award. The jury awarded $16,500 for losses on the sale of Jarussi's personal property which was within the range of his testimony. The jury also awarded $2,900 moving costs which was slightly less than his testimony. The jury awarded court costs and attorney fees pursuant to section 2-3-221, MCA. The jury also awarded actual cost of travel and lodging expenses for trial which was not included in the judgment.

The difference in salary and cost of living between Alaska and Montana is irrelevant as no items of damages encompassed this difference. No evidence was introduced by the Board supporting an offset on this basis. The verdict is clear that no damages were awarded for pain and suffering, loss of consortium, mental distress, loss of reputation or noneconomic or intangible damage. Where, as here, the amount of damages is clear and uncontradicted, a short period of jury deliberation and a unanimous verdict will not support a claim of excessive damages influenced by passion or prejudice.

Finally, the Board contends it did not violate Montana's Open Meeting Law. The Board argues that closure was proper under a statutory provision permitting closure "to discuss a strategy to be followed with respect to collective bargaining."

The Montana Constitution provides:

> "RIGHT TO KNOW. No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state

> government and its subdivisions, except
> in cases in which the demand of indivi-
> dual privacy clearly exceeds the merits
> of public disclosure." Art. II, Section
> 9, 1972 Mont. Const.

A statutory implementation of this constitutional mandate provides that meetings of a school board shall be "open to the public." Section 2-3-203(1), MCA. Subsection (3) of that statute provides the following exceptions:

> "However, a meeting may be closed to
> discuss a strategy to be followed with
> respect to collective bargaining or liti-
> gation when an open meeting would have a
> detrimental effect on the bargaining or
> litigating position of the public
> agency."

There is no claim or evidence that the litigation exception in the statute applies. The Board relies solely on the collective bargaining exception. The resolution of this issue depends on the correct meaning of the term "collective bargaining."

The appropriate guide to determine the meaning of words and phrases is section 1-2-106, MCA. The statute reads:

> "Construction of words and phrases. Words
> and phrases used in the statutes of
> Montana are construed according to the
> context and the approved usage of the
> language, but technical words and phrases
> and such others as have acquired a pecu-
> liar and appropriate meaning in law or
> are defined in chapter 1, part 2, as
> amended, are to be construed according to
> such peculiar and appropriate meaning or
> definition."

The common meaning of the term "collective bargaining" is identical to that used in the technical, legal sense. The American College Dictionary defines collective bargaining as "the process by which wages, hours, rules, and working conditions are negotiated and agreed upon by a union

with an employer for all the employees collectively whom it represents." American College Dictionary 236 (1966). Black's defines collective bargaining as:

> ". . . a procedure looking toward making of collective agreements between employer and accredited representative of employees concerning wages, hours, and other conditions of employment, and requires that parties deal with each other with open and fair minds and sincerely endeavor to overcome obstacles existing between them to the end that employment relations may be stabilized and obstruction to free flow of commerce prevented. . . . Negotiation between an employer and organized employees as distinguished from individuals, for the purpose of determining by joint agreement the conditions of employment." Black's Law Dictionary, 238-39 (Rev. 5th ed. 1979).

The "appropriate" and "peculiar" meaning of the term in the law is expressed in the National Labor Relations Act. It is contemplated in the definition of "unfair labor practice" that collective bargaining is negotiation between the employer and a representative of the employees. 29 USCA § 158(a)(5).

Numerous federal cases have held that collective bargaining has the well understood meaning in the law of settling disputes by negotiation between the employer and the representative of the employees. See e.g., United Construction Workers v. Haislip Baking Co. (4th Cir. 1955), 223 F.2d 872. ". . . Collective bargaining is an activity, presupposing that the employees shall have opportunity in absence of their employer to canvass their grievances, formulate their demands in common, and instruct an advocate who they believe will best press their suit." NLRB v. Stow Manufacturing Co. (2nd Cir. 1954), 217 F.2d 900, 904.

There is no specific definition of collective bargain-

ing in Montana law. Therefore, we adopt the definition brought forth by the foregoing authority.

We affirm the District Court's conclusion that the closing of the meeting to discuss Jarussi's employment status does not fall within the collective bargaining exception, thus voiding action taken by the Board regarding Jarussi. Jarussi was dealing with the School Board regarding his own future employment. His actions were not on behalf of anyone else and the Board's decisions would not affect anyone else. Hence, Jarussi had the right to be present during the Board's deliberations regarding his future with the School District.

If we were to adopt the Board's interpretation of collective bargaining, another avenue would be available to close public meetings. This undermines the policy of the Open Meeting Law and is contrary to the legislative mandate that the open meeting provisions should be liberally construed.

Affirmed.

_____
Chief Justice

We concur:

_____
_____
_____
_____
Justices

-10-