No. 02-573

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 11

MAURICE SHOEMAKER,

       Petitioner and Appellant,

  v.

KATHY DENKE,

       Respondent and Respondent.


APPEAL FROM:    District Court of the Twentieth Judicial District,
                    In and For the County of Sanders, Cause No. DV 2002-47,
                    Honorable Deborah Kim Christopher, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

              Edward A. Murphy, Datsopoulos, MacDonald & Lind, P.C.,
              Missoula, Montana

       For Respondent:

              Ann Moderie, Manley Law Office, Polson, Montana


                           Submitted on Briefs:  December 19, 2002

                                     Decided:  January 27, 2004

Filed:

                                     Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellant Maurice Shoemaker appeals from the order entered by the Twentieth Judicial District Court, Sanders County, dismissing his petition for judicial review of a final agency decision of the Human Rights Commission.  We affirm.

¶2     The following issue is presented on appeal:

¶3     Did the District Court err in dismissing Shoemaker's petition for judicial review for failure to exhaust administrative remedies?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On March 3, 2000, Kathy Denke (Denke), City Clerk for the City of Thompson Falls (City), filed a charge with the Human Rights Commission (HRC) alleging that Maurice Shoemaker (Shoemaker), a city council member, and the City, retaliated against her because she had previously filed a sexual harassment charge against the mayor of Thompson Falls.  A contested case hearing was conducted by a hearing examiner on December 20-21, 2000, and the examiner issued his Final Agency Decision on November 16, 2001.

¶5     In October 1999, approximately five months prior to Denke's filing of the subject complaint, the city council, during a regular city council meeting, agreed to a settlement of Denke's original sexual harassment claim.  The settlement agreement included clauses prohibiting both discussion of the terms of the agreement and further discrimination or retaliation by the mayor and city council.

¶6     In December 1999, Shoemaker requested to be added to the agenda for the next city council meeting for the ostensible purpose of clarifying alleged rumors regarding the City's

settlement with Denke, but the mayor denied his request. In response, on January 6, 2000, Shoemaker wrote a letter to the Sanders County *Ledger*, the local Thompson Falls newspaper, stating that the City's bookkeeping procedures under Denke's control were so poor that it was costing $50.00 per hour to have an accountant correct the situation; that Shoemaker disapproved of Denke's sexual harassment charge against the mayor; and that both the mayor and Denke should resign. The *Ledger* printed an edited version of Shoemaker's letter followed by an editorial note indicating that the deleted portions of the letter contained accusations that were either "unfair, unsubstantiated, a misrepresentation of the facts or inappropriate given [Shoemaker's] position on the council." When the *Ledger* refused to print the entire letter, Shoemaker made copies of the original letter available to citizens of Thompson Falls and read the deleted portions of the letter to citizens who called him and inquired about the letter and editorial comment in the newspaper.

¶7     Then, on January 19, 2000, Shoemaker wrote a second letter, copies of which were distributed to community members along with petitions requesting that Shoemaker be added to the agenda. This letter not only repeated Shoemaker's dissatisfaction with not being placed on the agenda and his call for the resignations of the mayor and Denke, but also included accusations that Denke had colluded with the mayor regarding Denke's sexual harassment settlement. As a result of Shoemaker's January 19th letter, and the petitions, the mayor added Shoemaker to the agenda.

¶8     Because of the controversy and the size of the anticipated crowd, the February 14, 2000, city council meeting was convened at a larger facility. Approximately 75 people

3

attended. Denke attended because she expected discussion regarding her discrimination claim. At the opening of the meeting, the mayor resigned and walked out. A council member inexperienced in conducting meetings was left in charge of the meeting.

¶9 During discussion of the first item of business, entitled "Human Rights Complaint," Shoemaker publicly discussed the rumors about the amount of Denke's settlement. Afterwards, a free-ranging discussion between the citizenry and council members occurred, including specific comments which suggested Denke had been a willing participant in the sexual harassment and that she had voluntarily engaged in sexual activity with the mayor during working hours. Subsequently, radio stations as far away as Great Falls broadcast reports of the meeting, and the *Missoulian* printed an extensive article reporting the public comments made during the meeting.

¶10 Following the HRC's contested case hearing, the hearing examiner entered findings of fact, conclusions of law, and an order. First, the hearing examiner concluded Shoemaker had illegally retaliated against Denke when he published, or caused to be published, letters imputing that Denke caused the City unnecessary expense from poor accounting procedures, and that she colluded with the mayor, her harasser, to obtain money improperly from the City. The hearing examiner found that Shoemaker's letters were published either with reckless disregard for the truth or falsity of statements therein, or with statements having provably false connotations about Denke. Second, the hearing examiner concluded Shoemaker, as a city council member, and the City were protected by legislative immunity for comments made during the city council meeting. Third, the hearing examiner denied

4

Denke's claims that the City illegally retaliated against her and that the City was liable for Shoemaker's actions. The hearing examiner found that as a result of the meeting's publicity and the two statements in Shoemaker's January 6th and January 19th letters, Denke suffered physical, emotional, and mental harm including hospitalization for depression and suicide. The hearing examiner awarded Denke $7,500.00 from Shoemaker for her severe emotional distress and imposed injunctive relief prohibiting Shoemaker from making future retaliatory statements.

¶11    On November 29, 2001, Denke appealed to the HRC the examiner's denial of Denke's claim that Shoemaker and the City retaliated against her during the city council meeting and that the City was liable for Shoemaker's actions. On the same date, the HRC issued an order establishing a briefing schedule with the following deadlines: appellant's (Denke's) brief – February 7, 2002; answer brief – February 25, 2002; reply brief – March 3, 2002. On December 3, 2001, Shoemaker filed a notice of cross-appeal. On December 12, 2002, the HRC issued an order in response to Shoemaker's cross-appeal establishing the same briefing schedule. Thus, Shoemaker's brief on appeal was also made due on February 7, 2002. Shoemaker neither objected to the briefing schedule nor requested more time.

¶12    On February 6, 2002, Denke filed her appellant's brief with the HRC. Shoemaker failed to file his cross-appellant's brief by February 7, 2002, as ordered. On February 25, 2002, Shoemaker filed a brief entitled "Appellee's and Cross-Appellant's Brief" in which he responded both to Denke's appeal as well as raised a constitutional claim on cross-appeal. Shoemaker's constitutional claim asserted that the Final Agency Decision holding him liable

5

for his statements in his January 6th and January 19th letters violated his right to freedom of expression protected under both the United States and Montana Constitutions. Denke moved to strike Shoemaker's appeal on the grounds that he did not file an appellant's brief by February 7, 2002. The HRC granted Denke's motion to strike on March 15, 2002, dismissing Shoemaker's appeal.

¶13    On May 24, 2002, Shoemaker filed a petition for judicial review in the District Court, alleging the findings and conclusions of the hearing examiner were clearly erroneous, arbitrary and capricious, and in violation of his freedom of expression protected by both the United States and Montana Constitutions. Denke filed a motion to dismiss Shoemaker's petition on the basis that Shoemaker had failed to exhaust his administrative remedies with the HRC. Shoemaker opposed Denke's motion to dismiss asserting: (1) he had exhausted his administrative remedies by raising the constitutional issue at the time of the contested case hearing; and (2) his petition for judicial review was exempt from the exhaustion rule because it is the duty of the courts, not administrative agencies, to decide constitutional questions.

¶14    On July 30, 2002, the District Court granted Denke's motion to dismiss Shoemaker's petition for judicial review on the basis Shoemaker failed to exhaust administrative remedies. None of Denke's claims are at issue in this appeal. Shoemaker appeals.

**STANDARD OF REVIEW**

¶15    We review a district court's ruling on a motion to dismiss "to determine whether the court abused its discretion." *Pickens v. Shelton-Thompson*, 2000 MT 131, ¶ 7, 300 Mont. 16, ¶ 7, 3 P.3d 603, ¶ 7.

6

**DISCUSSION**

**¶16    Did the District court err in dismissing Shoemaker's petition for judicial review for failure to exhaust administrative remedies?**

¶17    Shoemaker asserts the District Court erred in dismissing his petition for judicial review for failure to exhaust administrative remedies. He contends that the Final Agency Decision of the hearing examiner imputing liability for his statements in his January 6th and January 19th letters constituted a violation of his right to freedom of expression protected under both the First Amendment of the United States Constitution and Article II, Section 7, of the Montana Constitution. As such, Shoemaker argues that his petition for judicial review presented a purely legal, constitutional question for the court to decide, placing it under an exception to the requirement that a person must first exhaust administrative remedies.

¶18    The well-settled principle undergirding the exhaustion doctrine is that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638. The purpose of the exhaustion doctrine is to "allow[] a governmental entity to make a factual record and to correct its own errors within its specific expertise before a court interferes." *Bitterroot River Protection Ass'n v. Bitterroot Conservation Dist.*, 2002 MT 66, ¶ 22, 309 Mont. 207, ¶ 22 , 45 P.3d 24, ¶ 22.

¶19    Section 2-4-702(1)(a), MCA, is the statutory embodiment of the exhaustion doctrine:

> A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter.

7

*See also Grabow v. Mont. High Sch. Assn.*, 2002 MT 242, ¶ 35, 312 Mont. 92, ¶ 35, 59 P.3d 14, ¶ 35; *Barnicoat v. Commr. of Dept. of Labor and Indus*. (1982), 201 Mont. 221, 225, 653 P.2d 498, 500 ("It is a general principle that if an administrative remedy is provided by statute, that relief must be sought from the administrative body and the statutory remedy exhausted before relief can be obtained by judicial review.").

¶20 Montana recognizes an exception to the exhaustion doctrine when a purely legal issue is at the center of the dispute. In *Keller v. Dept. of Revenue* (1979), 182 Mont. 478, 597 P.2d 736, this Court established an exception to the exhaustion doctrine for purely legal questions, as we later explained:

> In *Keller*, taxpayers sought to appeal a ruling by the Department of Revenue to the District Court. The District Court held that they must exhaust their remedies with the State Tax Appeal Board. We held that the particular Department of Revenue ruling was an *interpretation of law* that must be made by the judiciary, and thus, the exhaustion doctrine is inapplicable.

*Taylor v. Dept. of Fish, Wildlife & Parks* (1988), 205 Mont. 85, 94, 666 P.2d 1228, 1232 (emphasis added). Also, in *Mitchell v. Town of West Yellowstone* (1988), 235 Mont. 104, 765 P.2d 745, this Court stated:

> [T]he exhaustion doctrine does not apply to *constitutional issues*. (Citing authority.) . . . Constitutional questions are properly decided by a judicial body, not an administrative official, under the constitutional principle of separation of powers. Art. III, Section 1, 1972 Mont. Const.

*Mitchell,* 235 Mont. at 109, 765 P.2d at 748 (emphasis added) (citing *Jarussi v. Board of Trustees* (1983), 204 Mont. 131, 135-36, 664 P.2d 316, 318).

¶21 Shoemaker argues that this exception to the exhaustion doctrine applies to his case because he has raised an issue of constitutional dimension. In further support of this

assertion, Shoemaker cites this Court's decisions in *Belknap Realty Co. v. Simineo* (1923), 67 Mont. 359, 215 P. 659; *Larson v. State* (1975), 166 Mont. 449, 534 P.2d 854; *Jarussi*; and *Mitchell.* In *Belknap*, a Montana corporation brought an action in district court against the Yellowstone County Treasurer for taxes paid that the plaintiff alleged were improperly assessed. This Court enunciated the "fundamentally wrong principle" exception to the general rule requiring exhaustion of administrative remedies if the administrative agency applied a fundamentally wrong principle in its method of assessing taxes. The *Belknap* court concluded, however, that the plaintiff was required to exhaust administrative remedies before petitioning the district court because of pending factual issues which were correctly reserved for determination by the administrative agency. *Belknap*, 67 Mont. at 365, 215 P. at 662.

¶22 In *Larson*, the plaintiffs challenged a local tax appraisal system which had been utilized prior to the statewide appraisal required under the 1972 Montana Constitution. This Court determined that the State's use of an unconstitutional and illegal appraisal was the kind of "fundamentally wrong principle" for which specific exception was made in *Belknap*. Thus, the *Larson* court held that the plaintiff did not have to exhaust administrative remedies before the Tax Appeal Board because the appraisal system involved a purely legal, constitutional issue, and not a question of fact requiring administrative determination. *Larson*, 166 Mont. at 456-57, 534 P.2d at 858.

¶23 In *Jarussi*, the district court held the plaintiff was not required to exhaust administrative remedies because the question before the court contained constitutional implications arising out of a possible conflict between a decision of the school board and

9

§ 2-3-203, MCA, Montana's open meeting law. This Court noted that actions to enforce Montana's open meeting law fell within the jurisdiction of the district courts because it was based on Article II, Section 9, of the Montana Constitution. *Jarussi*, 204 Mont. at 138, 664 P.2d at 319. Likewise, in *Mitchell*, the district court held the plaintiff was not required to exhaust administrative remedies because the question involved an equal protection issue arising under one of West Yellowstone's town ordinances. In support of the principle that the exhaustion doctrine does not apply to constitutional issues, this Court stated: "[t]he first business of courts is to provide a forum in which the constitutional rights of all citizens may be protected." *Mitchell*, 235 Mont. at 110, 765 P.2d at 748.

¶24 In the Final Agency Decision, the hearing examiner found that statements about Denke in Shoemaker's letters were "false and unprivileged." The hearing examiner further found that Shoemaker had published his letters "with reckless disregard for the truth or falsity of some pertinent statements they contained, knowing other pertinent statements to be false."

¶25 In his petition for judicial review, Shoemaker claimed as follows:

> 3. Petitioner is aggrieved in that the Hearing Examiner awarded damages against him on account of two letters, one of which was published in the Sanders County *Ledger*, a newspaper of general circulation in Sanders County Montana. The other letter was not published in the newspaper but became public. Certain portions of said letters were found to be retaliatory against Denke for filing an earlier complaint with the Montana Human Rights Commission. Said finding violates Petitioner's freedom of expression as protected by the First Amendment of the Constitution of the United States and Article II, Section 7 of the Montana Constitution.
> 4. The portions of the letters relied on in finding liability against Petitioner were not false factual assertions.

10

5. The decision of the Hearings Examiner is in violation of constitutional provisions, in excess of agency authority, clearly erroneous, and arbitrary, capricious, and an abuse of discretion.

In paragraph 3 of his petition, Shoemaker presented his constitutional claim. In paragraph 4, however, Shoemaker presented a contested issue of fact, namely, that "portions of the letters relied on in finding liability against Petitioner were *not* false factual assertions," contrary to the finding of the hearing examiner. (Emphasis added.) Further, in paragraph 5, Shoemaker asserted, *inter alia*, that the decision of the hearing examiner was "clearly erroneous," the standard of review used by courts in reviewing challenged findings of fact. Thus, as Denke correctly notes, Shoemaker did not limit his petition for judicial review to a purely legal question. Consequently, unlike *Larson*, *Mitchell*, and *Jarussi*, which did not require exhaustion where the plaintiffs presented purely legal, constitutional questions, Shoemaker, as in *Belknap*, raised issues of fact requiring exhaustion of administrative remedies.

¶26 Because Shoemaker's petition for judicial review presented a challenge to both findings of fact and conclusions of law, it did not qualify under the exception to the exhaustion doctrine. Thus, Shoemaker was required to exhaust available administrative remedies through the HRC appeals process, and to argue both his factual issue and his constitutional issue before the Human Rights Commission. Recently, in *Great Falls Tribune, et. al. v. Montana Public Service Commission*, 2003 MT 359, 319 Mont. 38, ___ P.3d. ___, we reviewed the district court's adjudication of factual and legal issues originally raised before the Public Service Commission. We concluded that it was error for the district

11

court to "make factual and legal determinations regarding whether specific documents or certain categories of documents in MPC's portfolio constituted property rights in the form of trade secrets or other confidential proprietary information which are constitutionally protected . . . without the benefit of the administrative agency developing a record and making threshold determinations . . . ." *Great Falls Tribune*, ¶ 42. As in *Great Falls Tribune*, the factual questions at issue here also required exhaustion of the administrative process.

¶27 Since Shoemaker's unresolved factual issue required that he present his case within the administrative appeals process, the next inquiry involves an analysis of whether Shoemaker complied with that process. After the hearing examiner issued his Final Agency Decision on November 16, 2001, Denke filed a notice of appeal on November 29, 2001. On that same day, the HRC issued a notice of consideration of Denke's appeal establishing the following briefing deadlines: appellant's brief – February 7, 2002; answer brief – February 25, 2002; reply brief – March 3, 2002. In response to Denke's appeal, Shoemaker filed a cross-appeal on December 3, 2001. On December 12, 2001, the HRC issued a notice of consideration of Shoemaker's cross-appeal establishing the same briefing schedule.

¶28 When Shoemaker still had not filed an appeal brief by February 19, 2002, Denke moved to "strike" his appeal pursuant to Rule 24.9.1717(7), ARM, the administrative rule governing timeliness of appeals to the HRC. Rule 24.9.1717(7), ARM, "Appeal of Final Orders of the Department," states:

(7) If an appellant fails to file a brief in support of the appeal within the time provided by this rule, or within any extension of time granted, any opposing party may move to strike the appeal.

On February 25, 2002, Shoemaker filed a brief entitled "Appellee's and Cross Appellant's Brief" in which he incorporated both his reply to Denke's appeal *and* his brief in support of his appeal. Since Shoemaker's appeal brief was filed on February 25, instead of February 7, it was filed eighteen days after the filing deadline, and his appeal was dismissed by the HRC. Shoemaker argues to this Court that the HRC briefing deadlines afforded him approximately two weeks fewer than Denke to complete his briefing. However, at no time did he object to the briefing deadlines or request an extension of time from the HRC as permitted by Rule 24.9.1717(7), ARM.

¶29     Shoemaker's factual contentions placed him, as respondent, squarely within the administrative process. Thus, Shoemaker correctly participated in the process as it moved toward exhaustion of the administrative remedies by pursuing his appeal of the Final Agency Decision to the full Human Rights Commission. Shoemaker erred, however, when he missed the February 7, 2002, deadline in the appeal process. At that point, the HRC, pursuant to Rule 24.9.1717(7), ARM, properly exercised its discretion in granting Denke's motion to dismiss Shoemaker's appeal.

¶30     For parties involved in the administrative process, the Montana Administrative Procedure Act (MAPA) provides that access to judicial review of an agency decision can be sought prior to exhaustion of the administrative process, if completion of that process would

13

not provide for an adequate remedy.  Section 2-4-701, MCA, "Judicial Review of Contested Cases," provides:

> **Immediate review of agency action.**  A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

Additionally, pursuant to § 2-4-704, MCA, MAPA, a court may reverse or modify a decision by an administrative agency if the decision is violative of an appellant's constitutional rights. Section 2-4-704, MCA, states, in pertinent part, that the court may reverse or modify:

> [I]f substantial rights of the appellant have been prejudiced because:
> (a) the administrative findings, inferences, conclusions, or decisions are:
> (i) in violation of constitutional or statutory provisions[.]

Section 2-4-704(2)(a)(i), MCA.  Although Shoemaker's challenge to the hearing examiner's factual findings constrained him to exhaust his administrative remedies, including appeal to the full Human Rights Commission, § 2-4-701, MCA, provides for interlocutory judicial redress when the final agency decision will not provide an adequate remedy, including cases involving a purely constitutional issue.  *See Gilpin v. State* (1991), 249 Mont. 37, 39, 812 P.2d 1265, 1266-67 (court held plaintiffs were required to exhaust administrative remedies where they had not made a showing, pursuant to § 2-4-701, MCA, that a review of the final agency decision by the hearing examiner would not provide an adequate remedy to their grievance which would justify an immediate review of the agency's action by the district court).  Further, § 2-4-704, MCA, permits judicial reversal or modification of an agency's decision if the court concludes that a party's substantial rights have been prejudiced by a constitutional violation resulting from administrative action.

14

¶31 Thus, the District Court did not abuse its discretion when it dismissed Shoemaker's petition for judicial review because he presented, in conjunction with his constitutional issue, a challenge to the underlying factual determinations upon which his constitutional defense rested. By his failure to meet the filing deadline established by the administrative agency, Shoemaker failed to prosecute his claim in the administrative forum, requiring forfeiture of his right to a review of the merits of his claim, and dismissal of his appeal.

¶32 Finally, we note that, because Shoemaker did not seek interlocutory judicial relief pursuant to § 2-4-701, MCA, he was therefore required to file his petition for judicial review in District Court within thirty days after the Commission's dismissal of his appeal:

> **Initiating judicial review of contested cases.** . . . [P]roceedings for review must be instituted by filing a petition in district court within 30 days after service of the final decision of the agency . . . .

The HRC granted Denke's motion to strike on March 15, 2002, with service on the same date. However, Shoemaker did not file his petition for judicial review until May 24, 2002. Thus, his petition was filed 70 days after the Final Agency Decision, and 40 days beyond the filing deadline.

¶33 We affirm the decision of the District Court.

/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON

15

/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART