No. 04-028

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 16

CITY OF BILLINGS POLICE DEPARTMENT and
LT. DILLARD BRYCE,

          Petitioners, Respondents, and Cross-Appellants,

   v.

CORINE OWEN and THE HUMAN RIGHTS BUREAU of the
MONTANA DEPARTMENT OF LABOR AND INDUSTRY, and the
HUMAN RIGHTS COMMISSION OF THE STATE OF MONTANA,

          Respondents and Appellants.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DV 2003-0218,
                    Honorable Diane G. Barz, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

           Timothy C. Kelly, Attorney at Law, Emigrant, Montana (Owen)

           Marieke Beck, Legal Services Division, Department of
           Labor and Industry, Helena, Montana (Human Rights)

      For Respondents:

           Harlan Krogh & Vicki McDonald, Moulton Bellingham
           Longo & Mather, Billings, Montana

Submitted on Briefs:  July 14, 2004

Decided:  January 24, 2006

Filed:

_____
                             Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Corinne Owen (Owen) and the Montana Department of Labor and Industry (the DOLI) appeal an Order of the District Court for the Thirteenth Judicial District, Yellowstone County, reversing and voiding a decision issued by the DOLI which ordered the Human Rights Bureau to produce Owen=s pre-employment investigation file compiled by the Billings Police Department (the BPD). We reverse and remand for further proceedings consistent with this Opinion.

¶2    Owen raises the following issues on appeal:

¶3    1. Whether the DOLI, as a State administrative agency, has the authority and jurisdiction to examine records in its possession and determine if privacy rights outweigh the right to review and inspect those records.

¶4    2. Whether Montana=s Constitution allows the BPD, or any other government agency, to deny employment applicants an opportunity to review and inspect, and, when necessary, challenge, background information that the agency collects about them in the employment application process.

¶5    3. Whether those who apply for employment with the BPD, or any other government agency, waive their constitutional right to privacy by requesting to inspect the information the agency obtained about them during the application process.

¶6    Because we reverse on Issue 1, we remand to the District Court for a determination on Issues 2 and 3.

## FACTUAL AND PROCEDURAL BACKGROUND

2

¶7     Owen applied for a position with the BPD during the 2000-2001 hiring process. In furtherance of her employment objective, Owen supplied information to the BPD so it could adequately assess her suitability for employment. Owen provided the BPD with names of past and present employers, supervisors, family members, friends, and peace officers with whom she was acquainted. Owen signed a release authorizing these individuals to supply information about her to the BPD.

¶8     During the hiring process, the BPD did background investigations of the top candidates in its hiring pool, including Owen. Two BPD detectives conducted the investigations, including interviews of co-workers, family members and other individuals with knowledge of the applicants. According to the BPD=s policies and procedures, the BPD also did a search of criminal justice information, obtained a credit history, and obtained other records concerning each finalist. Owen was not hired.

¶9     In January 2002, Owen filed a charge of discrimination with the DOLI against the BPD alleging that the BPD refused to hire her as a police officer because she is a woman. The DOLI=s Human Rights Bureau investigated the charge and found sufficient evidence to support the claim. Owen and the BPD settled before a hearing was held. The BPD agreed to hire Owen as a police officer in September 2002, at the same level of wages and benefits paid to the men hired the prior December and to pay damages including fees. The BPD also entered into a conciliation agreement that required affirmative actions to minimize the likelihood of future violations of the Human Rights Act.

¶10     After the human rights charge was settled, Owen asked to examine the records of the

3

BPD's background investigation of her that were furnished to the Human Rights Bureau. The BPD objected to the release of this information on the grounds that the records contained information from individuals who held an expectation that the information they had given the BPD would be kept confidential and that the privacy rights of those individuals outweighed Owen=s right to know. The BPD also demanded that Owen give up her privacy rights in the files kept on her in the event she succeeded in establishing her right to know the contents of those files. The matter was submitted on briefs before the DOLI. The DOLI hearing examiner denied the BPD=s objection and ordered the records produced for Owen=s inspection. The BPD sought judicial review from the Yellowstone County District Court.

¶11    On October 23, 2003, the District Court issued its Order and Memorandum voiding the DOLI=s decision. The court determined that the DOLI had no authority or jurisdiction to decide the constitutional issues raised by Owen. Even so, the court did not address those underlying constitutional issues and, instead, declared that those issues were moot. Owen and the DOLI appeal and the BPD cross-appeals.

**STANDARD OF REVIEW**

¶12    A district court reviews an administrative agency's decision in a contested case to determine whether the findings of fact are clearly erroneous and whether the agency correctly interpreted the law. *Ostergren v. Department of Revenue*, 2004 MT 30, ¶ 11, 319 Mont. 405, ¶ 11, 85 P.3d 738, ¶ 11 (citing *O'Neill v. Department of Revenue*, 2002 MT 130, ¶ 10, 310 Mont. 148, ¶ 10, 49 P.3d 43, ¶ 10). This Court employs the same standards when reviewing a district court's order affirming or reversing an administrative agency's decision.

4

*Ostergren*, ¶ 11.

## DISCUSSION

¶13 *Whether the DOLI, as a State administrative agency, has the authority and jurisdiction to examine records in its possession and determine if privacy rights outweigh the right to review and inspect those records.*

¶14 The District Court determined that the DOLI=s Final Agency Decision regarding Owen=s right to know under Article II, Section 9 of the Montana Constitution, is void because a judicial body, not an administrative body, is the proper forum to decide constitutional questions.

¶15 Owen argues on appeal that the District Court=s determination is clear error and that denying an agency the jurisdiction necessary to determine whether to disclose documents or information in its possession would be unworkable. Moreover, Owen argues that a decision placing that jurisdiction in a district court would unduly burden the constitutional right to know and would make the right to know dependent upon the ability to sue. Owen maintains that an administrative agency has the authority and responsibility to examine documents in its possession and to determine if disclosure of those documents implicates constitutionally protected rights, including privacy rights. Owen is not denying that the DOLI decision in her favor is subject to judicial review, she is simply contesting the District Court's determination that the DOLI's decision was voidable.

¶16 The BPD argues, on the other hand, that state administrative agencies do not have jurisdiction to decide purely constitutional questions where no factual issues exist. Here, the BPD argues, the issue is strictly of constitutional dimension--whether Owen's right to know

5

exceeds the privacy rights of third parties who contributed confidential information to the BPD's background investigation of Owen. The BPD contends that, in this case, Owen has not shown a compelling state interest which would override the privacy interests of the third parties who contributed information to the background investigation of Owen.

¶17 The BPD maintains that the cases Owen relies on to support her position, *Great Falls Tribune v. Mont. Public Ser. Com.*, 2003 MT 359, 319 Mont. 38, 82 P.3d 876, and *Shoemaker v. Denke*, 2004 MT 11, 319 Mont. 238, 84 P.3d 4, only clarify what this Court has stated since 1983--that constitutional questions such as the "right to know" are appropriately addressed by the courts, not by administrative agencies.

¶18 In *Great Falls Tribune*, the Montana Power Company (MPC) moved the Montana Public Service Commission (PSC) for a protective order regarding the details of various contracts the MPC had entered into with third-party energy suppliers in connection with the MPC's filing of its default supply portfolio docket with the PSC. The MPC represented that the information for which it sought a protective order contained constitutionally protected trade secrets and confidential proprietary information. After the PSC issued the requested protective order, the MPC filed the contracts under the protection of the order and provided redacted versions of the contracts to the public. Shortly thereafter, the Great Falls Tribune and other media entities (hereinafter "the media") brought an action seeking disclosure of some of the information falling within the parameters of the protective order. *Great Falls Tribune*, ¶¶ 9-13.

¶19 Both the MPC and the PSC moved to dismiss the court action based primarily on the

6

argument that the media failed to first file a motion before the PSC as required under the PSC's rules of administrative procedure for purposes of challenging the MPC's claims of confidentiality. The District Court denied the motions concluding, among other things, that since the central issues raised by the media in the district court action involved constitutional challenges to relevant administrative regulations, statutes, and Montana case law, the PSC lacked jurisdiction to determine the issues raised before the District Court. *Great Falls Tribune*, ¶¶ 41-42.

¶20    On appeal, we held that the media were required to exhaust their administrative remedies before filing an action in the District Court. We stated that the difficulty with not allowing an administrative agency to develop a record and make threshold determinations regarding whether specific documents in the MPC's portfolio constitute property rights in the form of trade secrets or other confidential proprietary information which are constitutionally protected, virtually eliminates the very purpose of the administrative agency. *Great Falls Tribune*, ¶¶ 42-44.

¶21    We further stated that

> [t]he founding purpose of state administrative agencies, such as the PSC, was due largely in part to place the initial decision-making into the hands of those who are most knowledgeable and qualified in the field to make those decisions.

*Great Falls Tribune*, ¶ 43. Hence, we remanded the case to the PSC for its consideration and decision on the media's request. *Great Falls Tribune*, ¶ 44. In doing so, we placed the initial responsibility for deciding whether or not to disclose records filed with an administrative

7

agency solely within the province of the agency.

¶22 By the same token, we held in *Shoemaker* that the petitioner therein must exhaust his administrative remedies through the appeals process of the Human Rights Commission (the HRC) before filing a petition for judicial review in the District Court. *Shoemaker*, ¶ 26. In *Shoemaker*, Kathy Denke, City Clerk for the City of Thompson Falls (the City) filed a charge with the HRC alleging that Maurice Shoemaker, a member of the Thompson Falls City Council, and the City retaliated against her because she had previously filed a sexual harassment charge against the mayor. *Shoemaker*, ¶ 4. A contested case hearing was conducted after which the hearing examiner awarded Denke $7,500.00 from Shoemaker for her severe emotional distress and imposed injunctive relief prohibiting Shoemaker from making future retaliatory statements. The hearing examiner denied Denke's claims that the City retaliated against her and that the City was liable for Shoemaker's actions. *Shoemaker*, ¶ 10.

¶23 Denke appealed to the HRC the hearing examiner's denial of her claim that Shoemaker and the City retaliated against her during the city council meeting and that the City was liable for Shoemaker's actions. Shoemaker filed a notice of cross-appeal, however, he failed to file his brief in a timely manner and the HRC dismissed his appeal. *Shoemaker*, ¶¶ 11-12.

¶24 Thereafter, Shoemaker filed a petition for judicial review in the District Court alleging that the findings and conclusions of the hearing examiner were clearly erroneous, arbitrary and capricious, and in violation of his freedom of expression protected by both the United

States and Montana Constitutions. Denke filed a motion to dismiss the petition on the basis that Shoemaker failed to exhaust his administrative remedies with the HRC. Shoemaker opposed Denke's motion to dismiss asserting that he had exhausted his administrative remedies by raising the constitutional issue at the time of the contested case hearing and that his petition for judicial review was exempt from the exhaustion rule because it is the duty of the courts, not administrative agencies, to decide constitutional questions. *Shoemaker*, ¶ 13.

¶25 The District Court granted Denke's motion to dismiss Shoemaker's petition for judicial review on the basis that Shoemaker failed to exhaust administrative remedies. *Shoemaker*, ¶ 14. On appeal, Shoemaker argued that his petition for judicial review presented a purely legal constitutional question for the court to decide, placing it under an exception to the requirement that a person must first exhaust administrative remedies. *Shoemaker*, ¶ 17.

¶26 We stated in *Shoemaker* that

> [t]he well-settled principle undergirding the exhaustion doctrine is that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638. The purpose of the exhaustion doctrine is to "allow [] a governmental entity to make a factual record and to correct its own errors within its specific expertise before a court interferes." *Bitterroot River Protection Ass'n v. Bitterroot Conservation Dist.*, 2002 MT 66, ¶ 22, 309 Mont. 207, ¶ 22, 45 P.3d 24, ¶ 22.

*Shoemaker*, ¶ 18. Hence, we held in that case that Shoemaker's appeal did not qualify as an exception to the exhaustion doctrine because it involved questions of fact and of law that had to be answered by the HRC before any court action could be filed. *Shoemaker*, ¶ 25.

¶27 In the case *sub judice*, the parties submitted more than simply a question of law in the proceeding before the DOLI. In its findings of fact, the DOLI resolved factual issues concerning whether Owen was requesting anything beyond information obtained by the BPD about her, whether the officers conducting the background investigation held the information as confidential, whether the unidentified sources of that information had any actual expectations of privacy and whether any such expectations were reasonable.

¶28 Consistent with the *Great Falls Tribune* and *Shoemaker* decisions, the DOLI had original jurisdiction in the instant case to review its own records and determine if any constitutionally protected privacy rights were implicated by those records and if those privacy rights clearly outweighed Owen's right to examine the records. Such an analysis by the DOLI involves mixed questions of fact and law, thus it does not qualify as an exception to the requirement that a person must first exhaust administrative remedies.

¶29 Furthermore, as Owen points out in her brief on appeal, denying administrative agencies the authority or jurisdiction to make the initial decision on whether its records may be examined, would put the "right to know" out of reach for most citizens. A lawsuit would be required on every occasion that a request to inspect records meets with an objection by the producing party. The time and costs would be an insurmountable barrier for all but a privileged few, those with sufficient resources to litigate the question in court. Constitutional rights were not intended to be so far out of reach.

¶30 Accordingly, we hold that the DOLI, as a State administrative agency, has the authority and jurisdiction to examine records in its possession and determine if privacy rights

outweigh the right to review and inspect those records.

¶31    Reversed and Remanded.


                                        /S/ JAMES C. NELSON



We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE