

FILED

06/23/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0299

IN THE SUPREME COURT OF THE STATE OF MONTANA

DA 19-0299

SIGNAL PEAK ENERGY, LLC,

Plaintiff and Appellant,

v.

MONTANA ENVIRONMENTAL INFORMATION
CENTER, STATE OF MONTANA BOARD OF
ENVIRONMENTAL REVIEW, ELLEN PFISTER,
and STEVE CHARTER,

Defendants and Appellees.

FILED

JUN 2 3 2020

Bowen Greenwood
Clerk of Supreme Court
State of Montana

ORDER

In this matter, Signal Peak, LLC (Signal Peak) has appealed from an order granting summary judgment to Defendants Montana Environmental Information Center (MEIC), State of Montana Board of Environmental Review (BER), Ellen Pfister (Pfister), and Steve Charter (Charter) (collectively, Defendants) on Signal Peak's complaint for declaratory relief concerning a discovery dispute that arose in a BER contested case. However, upon a review of the parties' briefing and the administrative record, we have concluded that procedural irregularities and unresolved administrative issues prohibit the Court from proceeding on the appeal, including reaching the merits of pending constitutional issues, and that the case must be remanded for further proceedings before the agency.

On August 11, 2016, MEIC filed a Notice of Appeal and Request for Hearing ("AM3 appeal") with BER challenging the Department of Environmental Quality's (DEQ) issuance of a coal mining permit to Signal Peak in 2013. Pfister and Charter had provided comments during the permitting process, are members of MEIC, and separately own surface lands located above the mining operations proposed by Signal Peak in its AM3 application. After a series of discovery disputes between the parties that required the

extension of discovery deadlines, the hearing examiner issued a scheduling order in the AM3 appeal that required remaining discovery to be completed by April 30, 2018.

On March 30, 2018, Signal Peak issued deposition notices and subpoenas duces tecum for Pfister and Charter, requiring they produce any written communications between them and entities or associations concerning impacts to water resources located on their surface lands. MEIC moved to quash the deposition notices and subpoenas on April 17, 2018, arguing that the depositions were inappropriate, unduly burdensome, overbroad by seeking information that had not been before the DEQ in the permitting process, improperly seeking privileged communications between MEIC and its members, and violative of Pfister's and Charter's constitutional rights to associate and petition the government for redress of grievances. Pfister and Charter joined MEIC's objections, and Signal Peak opposed the motion to quash.

The hearing examiner conducted a hearing on the motion on May 23, 2018, which essentially was a discussion between counsel for the parties and the examiner. Except for a later order simply staying the discovery deadlines pending resolution of the litigation that the parties would subsequently commence in the District Court, no written order was entered by the hearing examiner regarding the discovery issues and objections raised by the parties. The record captures only counsel's discussion with the hearing examiner about the requested depositions, particularly, the hearing examiner's concern about the constitutional issues raised within MEIC's motion to quash the depositions:

> [A]s a preliminary matter, I have one issue that's burning for me that I want you all to address. . . based on Montana Supreme Court case law, and specifically there is the Jarussi case and there are several others that discuss the separation of powers issue between MAPA and agencies deciding constitutional issues. In my understanding, I have no jurisdiction to decide constitutional issues and my inclination, unless you folks can convince me otherwise, is that that is a question for the District Court to resolve;
>
> So I guess what I need from you then, from potentially everybody, is a practical solution about how we're going to deal with this First Amendment problem and the jurisdiction piece of it;

2

[I]f we can fashion a solution here that [will] deal with the concerns without having to go to District Court, that would obviously be preferable. But if you're going to go to the District Court anyway *if the decision is anything other than a grant of the motion to quash*, then you might need to bring the First Amendment problems to District Court and you can deal with them anyway. *So practically, I need you all to tell me whether you want a decision from me on this or whether you want me to stay the underlying decision, or the underlying case while you go to District Court*. . . I will give you all until next Friday. I'm not going to issue an order on this, so just orally I will give you until next Friday to provide me with supplemental briefing all at the same time. . . . *My inclination is to not address the First Amendment or to make a record as to why I'm not addressing it, why I don't think it has to be addressed, it can be avoided, and then to make the ruling on the burden and the other issues.* [(Emphasis added)].

The hearing examiner inquired whether MEIC would withdraw its constitutional challenges, apparently believing this would permit the examiner to enter an order on "the other issues," namely, the non-constitutional grounds raised for quashing the deposition and subpoenas, but MEIC declined, stating that the "First Amendment concerns here are paramount." MEIC did advance alternative, non-constitutional arguments that the subpoenas sought privileged communications, sought information not presented to DEQ that would be "reopening" the record, were retaliatory, and overly burdensome. In the discussion, Signal Peak and MEIC appeared to agree that the discovery requests could be modified to be less burdensome, but also appeared to view the constitutional issues as primary. The hearing examiner ordered supplemental filings and, on June 1, 2018, the date the supplemental submissions were due, Signal Peak filed a status report that concurred with MEIC that "the [h]earing [e]xaminer and the Board of Environmental Review lack jurisdiction to decide the constitutional issue that the [Defendants] advanced in [their] Motion to Quash," but contended the Defendants had "presented no legitimate ground for the putative deponents to avoid their obligations to respond to discovery."

As noted, no written order was entered by the hearing examiner on either the constitutional or non-constitutional issues raised by the Defendants' motion to quash, and

after careful review of the record, we can discern no oral ruling on these issues either. In its briefing to this Court, Signal Peak offers that the hearing examiner "implicitly declin[ed] to quash the subpoena on the other grounds raised by MEIC, not[ing] that the remaining constitutional issue could only be addressed by the judiciary, not by the executive branch," but we are hard pressed to discern even an implicit ruling. Rather, it appears the hearing examiner was focused on resolution of the "jurisdiction piece of it," that is, the constitutional issues that the agency did not have jurisdiction to resolve, and directed the parties to proceed to the courts for a decision on those issues. Despite expressing an inclination, the hearing examiner never did "make the ruling on the burden and the other issues." If Signal Peak's assessment of an implicit ruling was correct, Signal Peak would have been the prevailing party before the hearing examiner, and yet it was Signal Peak, not MEIC, that initiated litigation by filing a Complaint for Declaratory Judgment before the District Court seeking a declaration that "complying with discovery would not infringe the Defendants' constitutional rights and order the Parties to abide by applicable rules and respond to discovery." More importantly, no one in this matter seemed to recognize that resolution of the non-constitutional objections to the discovery by the hearing examiner was a prerequisite to reaching the constitutional objections. A ruling that the depositions were improper on these non-constitutional grounds may well have mooted the constitutional objections.

At a minimum, the hearing examiner was presented with arguments concerning: the legality of additional discovery at this stage of the proceeding; the scope and burden of the requested subpoenas and depositions; the potentially privileged communications that would be encompassed by requests for communications between Pfister, Charter, and the associations; and the standing of MEIC to file a motion to quash on behalf of its members. As a consequence of the failure to resolve these non-constitutional discovery issues, this Court has been presented with arguments about administrative procedure for which there is no final ruling from the agency, or any ruling at all, that provides the agency's decision and rationale, including its interpretation of governing statutes and regulations. For

example, the parties argue at length about the scope of review for BER proceedings, with Signal Peak contending that "the BER is *not* 'confined to the record' relied on by DEQ, but must receive evidence on any issue raised in the permitting process," citing Admin. R. M. 1.3.217-221 and 1.3.230 (2020), and *MEIC v. DEQ*, 2005 MT 96, ¶¶ 13, 22-25, 326 Mont. 502, 112 P.3d 964. Defendants respond that "the only relevant analysis [for a permit appeal] is that contained within the four corners of the [technical review]. . . . BER is unambiguous that extra-record evidence is not allowed," citing § 82-4-227(3)(c), MCA, Admin. R. M. 17.24.405(6), and an administrative decision in *In re Bull Mountains*, No. BER 2013-07 SM, 56-57 (Mont. BER, Jan. 14, 2016). The District Court decided these administrative issues without the benefit of an agency decision or rationale about the agency's application of its regulations, and then proceeded to decide the constitutional issues.

While it is correct that the agency cannot resolve constitutional issues, *Jarussi v. Board of Trustees*, 204 Mont. 131, 135-136, 664 P.2d 316, 318 (1983), the administrative scope of review issue presented here, as well as the discovery issues that lie within the hearing examiner's discretionary governance, such as whether requested depositions are overly burdensome, must first be addressed and resolved by the agency before judicial review of any constitutional questions can be undertaken. Otherwise, the parties are seeking an advisory opinion from the courts on constitutional questions that may never be ripe or dispositive. "We have repeatedly recognized that courts should avoid constitutional issues whenever it is possible to decide a case without reaching constitutional considerations." *In re G.M.*, 2008 MT 200, ¶ 25, 344 Mont. 87, 186 P.3d 229 (internal citation omitted). Further, "[t]he well-settled principle undergirding the exhaustion doctrine is that 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Shoemaker v. Denke*, 2004 MT 11, ¶ 18, 319 Mont. 238, 84 P.3d 4 (internal citation omitted). Consequently, it is necessary to remand this matter for completion of the necessary administrative process by the agency. Therefore,

5

IT IS ORDERED that this appeal is DISMISSED WITHOUT PREJUDICE. The judgment of the District Court is VACATED.

IT IS FURTHER ORDERED that this matter is REMANDED to BER for further proceedings consistent with this order.

The Clerk is directed to provide a copy of this Order to counsel of record, to the Thirteenth Judicial District Court, and BER.

DATED this 23rd day of June, 2020.

_____

_____

_____

_____

_____
Justices