FILED

07/14/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0510

DA 19-0510

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 181

JAMES REAVIS,

      Plaintiff and Appellant,

    v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY
d/b/a FEDLOAN SERVICING,

      Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDV 2018-833
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Robert M. Farris-Olsen (argued), David K.W. Wilson, Morrison,
Sherwood, Wilson & Deola, PLLP, Helena, Montana

      For Appellee:

            Kenneth K. Lay (argued), Brett P. Clark, Crowley Fleck, PLLP, Helena,
Montana

      For Amicus Curiae Timothy C. Fox, Montana Attorney General:

            Timothy C. Fox, Montana Attorney General, Matthew T. Cochenour,
Acting Solicitor General, Jon Bennion, Deputy Attorney General, Helena,
Montana

            Mark W. Mattioli, Bureau Chief, Chuck R. Munson, Assistant Attorney
General, Office of Consumer Protection, Helena, Montana

      For Amicus Curiae Montana Federation of Public Employees:

            Jonathan McDonald, McDonald Law Office, PLLC, Helena, Montana

For Amicus Curiae Veteran's Education Success:

    Keif Storrar, Doubek, Pyfer & Storrar, Helena, Montana

For Amici Curiae Montana Legal Services Association, National Consumer Law Center, and Student Borrower Protection Center

    John Heenan, Heenan & Cook, PLLC, Billings, Montana

Argued :  May 20, 2020
Submitted:  May 26, 2020
Decided:  July 14, 2020

Filed:

Clerk

2

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 James Reavis appeals from the order of First Judicial District Court, Lewis and Clark County, dismissing his complaint against his student loan servicer Pennsylvania Higher Education Assistance Agency (PHEAA) as expressly preempted by the Higher Education Act (HEA), 20 U.S.C. § 1098g. We address the following issues on appeal:

> *Whether Reavis's state law claims against PHEAA are expressly or implicitly preempted by the HEA.*

¶2 We conclude they are not. We reverse the District Court's order dismissing Reavis's claims and remand the case for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 This case involves the administration of student loans by a private loan servicer in the federal student loan system established by the HEA. "The HEA was originally passed in 1965 '[t]o strengthen the educational resources of our colleges and universities and to provide financial assistance for students in postsecondary and higher education.'" *Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 819 (7th Cir. 2013) (quoting Higher Education Act of 1965, Pub. L. No. 89-329, 79 Stat. 1219, 1219 (1965)) (alterations in original). Congress passed the HEA "to keep the college door open to all students of ability, regardless of socioeconomic background." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1030 (9th Cir. 2009) (internal quotations omitted) (citing 20 U.S.C. § 1070(a)).

¶4 Originally, the HEA provided for the United States Department of Education to act as a guarantor of loans made to student borrowers by private lenders. *See* 20 U.S.C. § 1071. However, since 2010, the Department of Education has exclusively loaned money directly

3

to student borrowers and contracts with private entities to service those loans. *See* 20 U.S.C. §§ 1071(d), 1087a, 1087f. The Department of Education issues a variety of loans directly to student borrowers through the William D. Ford Direct Loan Program under Title IV of the HEA. *See generally*, 20 U.S.C. §§ 1087a-1087j. Student borrowers rarely interact with the actual holder of their debt. Rather, borrowers communicate with their federal loan servicer. A servicer "contract[s] with a lender or guaranty agency to administer . . . any aspect of the lender's or guaranty agency's" programs. 34 C.F.R. § 682.200. The functions of a student loan servicer include an array of acts and responsibilities, including receiving and applying payments to a borrower's account, maintaining account records, and other "[i]nteractions with a borrower, including activities to help prevent default on obligations arising from post-secondary education loans conducted to facilitate" repayment. 12 C.F.R. § 1090.106.

¶5 In 2007, Congress created the Public Service Loan Forgiveness program (PSLF) to encourage students to enter public service careers by promising student loan forgiveness. *See* College Cost Reduction and Access Act, Pub. L. No. 110-84, § 401, 121 Stat. 784, 800 (2007), codified as amended at 20 U.S.C. § 1087e(m). Through PLSF, a borrower with direct loans from the Department of Education may have his or her loan balances forgiven after meeting certain requirements: The borrower must make 120 on-time monthly payments on direct loans under a qualifying repayment program while working for a qualifying public service employer. PHEAA has the exclusive contract to administer loans

4

for which forgiveness is sought under the PSLF and is the loan servicer contracted to service Reavis' student loans.

¶6 Because the District Court dismissed this case on a motion to dismiss, the following facts are drawn from Reavis's complaint and accepted as true.

¶7 Reavis attended the University of Montana School of Law from 2007 to 2010 and obtained a juris doctorate degree. He then went on to the Monterey Institute of International Studies for an additional two years of study and ultimately obtained a master's degree in Public Administration in 2012. While pursuing his masters, Reavis also took language courses in the summers of 2010 and 2011. He funded these graduate studies with student loans.

¶8 In 2012, Reavis consolidated his loans into federal direct loans to ensure all of his loans would qualify for forgiveness under PSLF. Reavis began working for the Montana Office of the Public Defender (OPD) in May 2012 and continues to work as an appellate defender. OPD is a qualifying employer under PSLF. Reavis has consistently made his payments on time and in the correct amount under a qualifying repayment program. Reavis alleges PHEAA, however, has consistently failed to accurately account for his payments.

¶9 PHEAA has broken Reavis's loans into a series of loan sequences. Reavis maintains all of his loans came out of their respective grace periods at the same time, the first payments for all of the loan sequences should have started on the same day, and thus each loan sequence should have the same number of qualifying payments made on it. He alleges that between June 2012 and the filing of his complaint he had made 65 qualifying

payments. But according to PHEAA's accounting, Reavis has not made the same number of qualifying payments on each loan sequence. PHEAA reported to Reavis he has made between 34 and 54 qualifying payments on the different loan sequences.

¶10 In addition, Reavis alleged PHEAA provided him with conflicting information regarding the amount that was due during particular pay periods. Reavis alleges he would often call PHEAA to determine the amount of payment due during a particular pay period, but the payment amount he was told over the phone would not match the amount on the written statement he would receive later.

¶11 Further, Reavis alleges inconsistencies in PHEAA's administration of his income-based repayment plan. The income-based payment plan required Reavis to update his employment information regularly. From 2012 to 2017, Reavis reported this information annually each May to PHEAA. In 2017, PHEAA changed the length of the review period and only qualified Reavis through October 2017, rather than through May 2018 as expected. PHEAA did not inform Reavis he was only qualified through October 2017. PHEAA's records also show an additional consolidation of Reavis' loans in March 2014, but Reavis does not recall signing any consolidation other than the one in 2012. In another instance, PHEAA advised Reavis to switch payment plans from income-based repayment to Revised Pay As You Earn (REPAYE), which he did. Finally, PHEAA's online system would not accept a payment made on a Saturday until the following Monday.

¶12 Reavis filed suit against PHEAA on August 8, 2018, raising claims that PHEAA violated the Consumer Protection Act; was negligent in its accounting of his payments;

engaged in deceit, negligent misrepresentation, or constructive fraud; and breached the implied covenant of good faith and fair dealing. Additionally, Reavis sought declaratory relief with respect to the number of qualifying payments he has made under the PSLF program. All of these claims arise under state law. PHEAA moved to dismiss the case under M. R. Civ. P. 12(b)(1) on the grounds that Reavis's claims were not ripe and therefore not justiciable, because Reavis is not yet eligible to apply for PSLF loan forgiveness. PHEAA filed a second motion to dismiss under M R. Civ. P. 12(b)(6) on the grounds that all of Reavis's claims were preempted by the HEA and otherwise failed to state a claim for relief. The District Court determined the HEA expressly preempted Reavis's claims and granted PHEAA's Rule 12(b)(6) motion to dismiss. The District Court did not address the other grounds for dismissal set forth in the Rule 12(b)(6) motion or Rule 12(b)(1) motion.

## STANDARD OF REVIEW

¶13    We review de novo a district court's ruling on a M. R. Civ. P. 12(b)(6) motion to dismiss. *Hein v. Sott*, 2015 MT 196, ¶ 7, 380 Mont. 85, 353 P.3d 494. We construe the complaint in the light most favorable to the plaintiff and all allegations of fact are taken as true. *Hein*, ¶ 7.

## DISCUSSION

¶14    *Whether Reavis's state law claims against PHEAA are expressly or implicitly preempted by the HEA*.

¶15    The District Court determined the HEA expressly preempted Reavis's claims based on the statutory language of 20 U.S.C. § 1098g, which preempts any state law disclosure requirements on federal loan servicers. The District Court concluded Reavis' claims all

7

arose from or related to alleged disclosures or non-disclosures made by PHEAA to him and that a claim that a servicer misrepresented a business practice is merely the converse of a state law requirement to make alternate disclosures, which is expressly preempted.

¶16 Under the United States Constitution's Supremacy Clause, federal law is "the supreme Law of the Land; . . . any Thing in the Constitution of Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. When applying the Supremacy Clause, we start "with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 2617 (1992) (quotation omitted). The "ultimate touchstone" of preemption analysis is the purpose of Congress. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103, 84 S. Ct. 219, 223 (1963). To determine Congress's purpose, we look to the "text and structure of the statute at issue." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737 (1993). Congress's intent to preempt state law may be stated expressly in a statute or implied by the statute's structure and purpose. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S. Ct. 1305, 1309 (1977).

¶17 Preemption can occur in three different ways: express, conflict, and field. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275 (1990). Express preemption applies when Congress clearly declares its intention to preempt state law through explicit statutory language. *See English*, 496 U.S. at 78-79, 110 S. Ct. at 2275. Conflict preemption applies when there is an actual conflict between state and federal law such that it is

impossible to obey both or when state law stands as an obstacle to fully accomplishing the objectives of Congress. *English*, 496 U.S. at 79, 110 S. Ct. at 2275. Field preemption applies to only a few fields of law when federal law so thoroughly occupies a legislative field as to make it reasonable to infer Congress left no room for the states to act. *English*, 496 U.S. at 79, 110 S. Ct. at 2275. PHEAA argues Reavis's state law actions are expressly preempted under the HEA or in the alternative, the claims are preempted under conflict preemption.

**Express Preemption**

¶18 The District Court concluded and PHEAA argues on appeal that Congress expressly preempted state law claims such as Reavis's with 20 U.S.C. § 1098g, because Reavis's claims are properly characterized as improper disclosure claims. Reavis maintains he is not alleging PHEAA has a duty to disclose certain information, but rather it has a duty to speak truthfully when it does disclose information and a duty to accurately account for his payments.

¶19 Express preemption is a question of statutory interpretation. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484, 116 S. Ct. 2240, 2250 (1996). "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, ___ U.S. ___, 139 S. Ct. 1743, 1748 (2019) (quotation omitted). While § 1098g indicates Congress "intended the [HEA] to preempt at least some state law, we must nonetheless 'identify the domain expressly preempted' by that

language." *Lohr*, 518 U.S. at 484, 116 S. Ct. at 2250 (quoting *Cipollone*, 505 U.S. at 517, 112 S. Ct. at 2618) (citation omitted).

¶20    20 U.S.C. § 1098g provides: "Loans made, insured, or guaranteed pursuant to a program authorized by title IV of the Higher Education Act of 1965 (20 U.S.C. § 1070 et seq.) shall not be subject to any disclosure requirements of any State law." The HEA does not define "disclosure requirements," but the statute does require that loan servicers make certain disclosure to borrowers at particular points in time. 20 U.S.C. § 1083(a)-(b), (e). Section 1083 mandates certain disclosures of information during various stages of the loan, such as at or before a lender disburses a loan or at or before the start of the repayment period. 20 U.S.C. § 1083(a)-(b). The statute requires the servicer provide certain information with each bill or statement sent to the borrower, including the original principal amount of the loan, the borrower's current outstanding loan balance, the loan's interest rate, and the total amount the borrower has paid in interest and in the aggregate. 20 U.S.C. § 1083(e)(1). The servicer must provide additional information when the borrower either has provided notice that he is having difficulty making payments or is 60 days delinquent in making payments. 20 U.S.C. § 1083(e)(2)-(3). Viewed in its statutory context, the term "disclosure requirements" of 20 U.S.C. § 1098g "refers to the HEA's requirements that certain information be communicated to borrowers during the various stages of the loan, as laid out in § 1083 of the statute. Thus, the domain § 1098g preempts is the type of disclosures to borrowers that § 1083 requires." *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908, 917 (11th Cir. 2020).

10

¶21 Reavis alleges PHEAA (1) violated Montana's Consumer Protection Act by failing to accurately account for his payments and misleading him regarding the number of payments he had made; (2) acted negligently through breaching its duty to account for his payments and to determine whether his payments were "qualifying payments" under PSLF; (3) engaged in willful deceit, negligent misrepresentation or constructive fraud by making false statements that it had accurately collected and classified his payments; and (4) breached the implied covenant of good faith and fair dealing by interfering with his justified expectation that PHEAA would accept and apply his payments in a timely manner. Finally, Reavis sought a declaration from the court of the number of qualifying payments he had made on his loans. In each of these claims, Reavis challenges *actions* taken by PHEAA, not merely improper disclosures. He is not seeking additional or alternative disclosures from PHEAA, but rather is challenging PHEAA's accounting practices. While Reavis learned of PHEAA's inaccurate accounting through its disclosures to him, it is PHEAA's failure to accurately account for Reavis's payments that forms the basis of his claims.

¶22 PHEAA relies on the Ninth Circuit case *Chae v. SLM Corp.*, 593 F.3d 936 (9th Cir. 2010), to support its argument that § 1098g preempts Reavis's claims. At issue in *Chae* were state law claims challenging how a federal student loan servicer communicated its methods of calculating interest, assessing late fees, and setting the first repayment date. *Chae*, 593 F.3d at 940-41. The borrowers in *Chae* claimed the servicer violated California state law by failing to disclose certain information about these methods in billing

statements and coupon books. *Chae*, 593 F.3d at 942. The claims in *Chae* challenged how the servicer communicated information. *Chae*, 593 F.3d at 642-43. The Ninth Circuit explained that the servicer in *Chae* had disclosed the information about practices permitted by federal law in ways permitted by federal law and thus, state law claims that would require the information to be disclosed in a different way were preempted by § 1098g. *Chae*, 593 F.3d at 643. Unlike the claims at issue in *Chae*, Reavis does not allege that disclosures and practices approved under federal law are misleading under state law. Rather, the crux of Reavis's claims are that PHEAA failed to accurately account for the payments he made. The HEA does not permit PHEAA to inaccurately account for Reavis's payments. Reavis's allegations of failure to accurately account for payments does not rest on a disclosure requirement from PHEAA.

¶23 Finally, unlike the District Court, we decline to give special deference to the U.S. Department of Education's 2018 informal guidance, entitled "Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servers." 83 Fed. Reg. 10619 (Mar. 12, 2018). In the informal guidance, the Department expressed its view that the HEA preempts all state regulations that impact federal loan servicing. We agree with most federal courts that have reached the issue that under *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161 (1944), the Department's guidance has little persuasive value and should be given little weight. *See Lawson-Ross*, 955 F.3d at 921 n.13; *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 651 n.2 (7th Cir. 2019); *Travis v. Navient Corp.*, No. 17-CV-4885 (RRM)

12

(ST), 2020 U.S. Dist. LEXIS 87112, at *23-26 (E.D.N.Y. May 18, 2020); *New York v. Pa. Higher Educ. Assistance Agency*, No. 19 Civ. 9155 (ER), 2020 U.S. Dist. LEXIS 77655, at *46 n.14 (S.D.N.Y. May 1, 2020); *Hyland v. Navient Corp.*, No. 18cv9031 (DLC), 2019 U.S. Dist. LEXIS 113038, at *19-21 (S.D.N.Y. July 8, 2019); *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 552-53 (M.D. Pa. 2018); *Student Loan Servicing All. v. District of Columbia*, 351 F. Supp. 3d 26, 48-51 (D.D.C. 2018). The U.S. Department of Education's 2018 informal guidance is not particularly thorough and "represents a stark, unexplained change" in the Department's position. *Student Loan Servicing All.*, 351 F. Supp. 3d at 50.

¶24 Pursuant to the standards for M. R. Civ. P. 12(b)(6), Reavis's claims as pleaded are not expressly preempted by 20 U.S.C. § 1098g and survive dismissal.

**Conflict Preemption**

¶25 The District Court did not reach whether conflict preemption barred Reavis's claims, but this Court should. Conflict preemption is a question of law that we can address at the pleading stage. State laws are barred under conflict preemption if it would be impossible to comply with both state and federal law or that state law constitutes an obstacle to satisfying the objectives of Congress. *English*, 496 U.S. at 79, 110 S. Ct. at 2275. PHEAA maintains the application of state law would be an obstacle to the operation of federal student loan programs because subjecting PHEAA to the disparate laws of fifty states would frustrate Congress's objective of uniformity in the federal student loan regime.

13

¶26 The structure of the HEA does not support PHEAA's arguments that Reavis's claims are preempted under a theory of conflict preemption. The HEA contains several express preemption provisions: 20 U.S.C. § 1078(d) (usury laws), § 1091a(a)(2) (statute of limitations); § 1091a(b) (collections costs and infancy defenses); § 1095a(a) (garnishment requirements), as well as § 1098g (disclosure requirements). These provisions show Congress considered preemption issues and made choices about what state law claims would be preempted under the HEA. Courts should enforce those provisions, but not add to them.

¶27 Further, even if we were to agree with PHEAA that one of Congress's objectives in enacting the HEA was to ensure uniformity in the federal student loan system,[1] we are not convinced allowing Reavis's claims to proceed would harm that goal or somehow make it impossible for PHEAA to comply with both the HEA and Montana's consumer protection and tort laws as alleged by Reavis in his complaint. State law prohibitions against unfair, deceptive, or negligent conduct not explicitly permitted by the HEA will not harm the HEA's uniform requirements for federal student loan programs. PHEAA essentially asks this Court to find that the HEA imposes an expansive and unsupported level of preemption that would reach the level of field preemption, which courts interpreting the HEA have soundly rejected. *See, e.g., Chae*, 593 F.3d at 941-42. Pursuant to the standards for M. R.

---

[1] Recent decisions in several federal courts have questioned whether uniformity is an objective of the HEA. *See, e.g., Lawson-Ross*, 955 F.3d at 921-22 (collecting cases); *New York*, 2020 U.S. Dist. LEXIS at *44-45.

14

Civ. P. 12(b)(6), Reavis's state law claims as pleaded are not preempted under a theory of conflict preemption and survive dismissal.

## CONCLUSION

¶28    The District Court's order is reversed, and the case is remanded for further proceedings consistent with this Opinion.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE