FILED

03/25/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0194

DA 24-0194

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 55

QLARANT INTEGRITY
SOLUTIONS, LLC,

      Petitioner and Appellee,

  v.

NICHOLAS GUTHNECK,

      Respondent and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV-2023-483
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Torrance L. Coburn, Tipp Coburn Lockwood, PC, Missoula, Montana

     For Appellee:

        Amy D. Christensen, Vicki Bignell, Christensen & Prezeau, PLLP,
Helena, Montana

                                      Submitted on Briefs:  October 16, 2024

                                              Decided:  March 25, 2025

Filed:

_____
                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Nicholas Guthneck (Guthneck) appeals from the March 28, 2024 Order – Petition for Judicial Review issued by the First Judicial District Court, Lewis and Clark County. The District Court granted the petition for judicial review filed by Qlarant Integrity Solutions, LLC (Qlarant), arising from the Montana Human Rights Commission's (HRC) June 27, 2023 remand order in Montana Human Rights Bureau (HRB) Case No. 0220091. The District Court's Order determined the HRC incorrectly rejected the Office of Administrative Hearings (OAH) hearing officer's order dismissing Guthneck's discrimination claim and remanded to the HRC with instructions to adopt the hearing officer's order to dismiss.

¶2 We address the following restated issues on appeal:

*1. Whether the District Court erred when it concluded the Hearing Officer had the authority to determine whether Executive Order 14042 preempted § 49-2-312, MCA.*

*2. Whether the District Court erred when it concluded the Hearing Officer correctly determined Executive Order 14042 preempted § 49-2-312, MCA, as to employers in Qlarant's position when Executive Order 14042 was in effect.*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Guthneck was hired as a health fraud investigator by Qlarant, a Maryland company which performs services on federally funded contracts, on September 21, 2020. Guthneck began working for Qlarant on October 12, 2020, and worked remotely from his residence in Montana.

2

¶5 On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. On January 20, 2021, President Biden was sworn into office and issued Executive Order 13991. Protecting the Federal Workforce and Requiring Mask-Wearing, 86 Fed. Reg. 7045 (Jan. 25, 2021). EO 13991, as relevant to this appeal, established the Safer Federal Workforce Task Force (Task Force), which was to "provide ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity of Government functions during the COVID-19 pandemic." 86 Fed. Reg. 7045, 7046 (Jan. 25, 2021). During the 2021 legislative session, the Montana Legislature passed House Bill 702, which has since been codified as § 49-2-312, MCA. HB 702 makes it an unlawful discriminatory practice for "an employer to refuse employment to a person, to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment based on the person's vaccination status or whether the person has an immunity passport." Section 49-2-312(1)(b), MCA (2021 Mont. Laws ch. 418, § 1). Governor Gianforte signed HB 702 on May 7, 2021, at which time the relevant portions of the bill became immediately effective. 2021 Mont. Laws ch. 418, § 5.[1]

¶6 On September 9, 2021, President Biden signed Executive Order 14042. Ensuring Adequate COVID Safety Protocols for Federal Contractors, 86 Fed. Reg. 50,985 (Sept. 14, 2021). EO 14042 required federal contractors to comply with guidance published by the Task Force. The Task Force issued COVID-19 Workplace Safety: Guidance for Federal

---

[1] An appropriation providing $200 from the general fund to the department of labor and industry became effective on July 1, 2021. 2021 Mont. Laws ch. 418, §§ 2, 5.

Contractors and Subcontractors on September 24, 2021. The September 24 Guidance required that all "[c]overed contractor employees must be fully vaccinated no later than December 8, 2021." A person was considered "fully vaccinated" for COVID-19 "two weeks after they have received the second dose in a two-dose series, or two weeks after they have received a single-dose vaccine." Covered contractors were required to obtain documentation from their employees showing the record of immunization. Covered contractors were allowed to provide accommodations, including exceptions to the vaccine mandate, to those with a disability or a sincerely held religious belief, practice, or observance. The September 24 Guidance also provided, for those working remotely, such as Guthneck:

> An individual working on a covered contract from their residence is a covered contractor employee, and must comply with the vaccination requirement for covered contractor employees, even if the employee never works at either a covered contractor workplace or Federal workplace during the performance of the contract. A covered contractor employee's residence is not a covered contractor workplace, so while in the residence the individual need not comply with requirements for covered contractor workplaces, including those related to masking and physical distancing, even while working on a covered contract.

¶7 On October 6, 2021, Qlarant sent a company-wide email detailing its mandatory vaccination policy. Qlarant's policy required employees to submit proof of vaccination by no later than November 24, 2021. On October 22, 2021, Guthneck emailed Qlarant HR representative Lauren Dulin that he believed Qlarant's vaccination policy was in violation of Montana law due to HB 702. Dulin responded on October 25, 2021, noting that Qlarant performed services on federally funded contracts and was therefore required to comply with EO 14042 and Task Force guidance, HB 702 was not applicable, and Guthneck was

4

subject to Qlarant's vaccination policy. On November 3, 2021, Guthneck again emailed Dulin, stating he remained undecided about sharing his vaccination status with Qlarant and informing her that Montana Attorney General Austin Knudsen, and nine other state attorneys general, had filed a lawsuit asserting EO 14042 was unconstitutional.

¶8 On November 4, 2021, Qlarant asked Guthneck for his decision regarding disclosure of his vaccination status. Guthneck declined to provide his vaccination status to Qlarant. Qlarant informed Guthneck he was terminated from employment and relieved of all duties, but would receive pay and benefits through November 24, 2021.

¶9 Guthneck filed a complaint with the HRB on November 4, 2021, alleging he was discriminated against and unlawfully terminated due to his refusal to disclose his vaccination status to Qlarant. After an informal investigation, the HRB determined reasonable cause supported Guthneck's allegation of discrimination. The matter was set for a contested case hearing in the OAH. Prior to the hearing, Qlarant moved to dismiss Guthneck's complaint for failure to state a claim upon which relief may be granted, asserting EO 14042 preempted § 49-2-312, MCA, during the relevant time period of October 6, 2021, when Qlarant informed Guthneck of its vaccination policy, to November 4, 2021, when Qlarant terminated Guthneck for refusing to disclose his vaccination status. After the parties briefed the issue, the Hearing Officer issued an Order on Respondent's Motion to Dismiss on February 24, 2023. The Hearing Officer determined that EO 14042 preempted § 49-2-312, MCA, during the relevant time period, both expressly and under a conflict preemption analysis, and that Qlarant was obligated to follow EO 14042. The Hearing Officer dismissed Guthneck's complaint with prejudice.

5

¶10　Guthneck appealed the Hearing Officer's decision to the HRC. The parties briefed the matter and the HRC considered the matter at a May 18, 2023 hearing, at which attorneys for both parties presented oral argument. The HRC determined the Hearing Officer, and the HRC itself, lacked authority to determine whether EO 14042 preempted § 49-2-312, MCA, as the preemption question was a constitutional determination which is properly decided by the courts, not executive branch administrative agencies. The HRC vacated the Hearing Officer's dismissal order.

¶11　Qlarant then filed a Petition for Judicial Review in the District Court, seeking an order reversing the HRC's decision rejecting the Hearing Officer's decision. The parties fully briefed the matter before the District Court issued its Order – Petition for Judicial Review on March 28, 2024. The District Court granted Qlarant's petition for judicial review, determined the Hearing Officer had authority to address the preemption arguments and did not err in determining preemption applied to bar Guthneck's discrimination claim. The District Court reversed the HRC's remand order and remanded the matter to the HRC "with instructions to adopt the hearing officer's February 24, 2023 order dismissing Guthneck's claim."

¶12　Guthneck appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶13　The Montana Administrative Procedure Act (MAPA) provides that a "preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy." Section 2-4-701, MCA. "Contested case administrative conclusions and applications of law are subject to de novo

6

review for correctness." *City of Great Falls v. Int'l Ass'n of Fire Fighters*, 2024 MT 302, ¶ 8, 419 Mont. 262, 560 P.3d 621 (citing *Ruby Mountain Trust v. Dep't of Revenue*, 2000 MT 166, ¶ 13, 300 Mont. 297, 3 P.3d 654). We review a district court's order affirming or reversing an agency's findings of fact for clear error and an agency's interpretation and application of the law de novo for correctness. *Denke v. Shoemaker*, 2008 MT 418, ¶ 39, 347 Mont. 322, 198 P.3d 284.

## DISCUSSION

¶14     *1. Whether the District Court erred when it concluded the Hearing Officer had the authority to determine whether Executive Order 14042 preempted § 49-2-312, MCA.*

¶15     Guthneck asserts the District Court erred by concluding the Hearing Officer had authority to determine whether EO 14042 preempted § 49-2-312, MCA, claiming a preemption determination is a constitutional question which may only be answered by a court. Qlarant contends the District Court correctly determined the HRC erred when it concluded the Hearing Officer lacked authority to determine issues of preemption.

¶16     Relying on *Jarussi v. Bd. of Trs.*, 204 Mont. 131, 664 P.2d 316 (1983), Guthneck contends the OAH Hearing Officer, a member of the executive branch of the government, lacks authority to determine the constitutional question of whether federal law, such as EO 14042, preempts Montana law, such as § 49-2-312, MCA. In *Jarussi*, a principal sued a school district's board of trustees, asserting the board violated Montana's open meeting law by improperly closing meetings. Jarussi asserted the board's actions violated his Mont. Const. art. II, § 9 right to know. *Jarussi*, 204 Mont. at 135-36, 664 P.2d at 318. The board asserted Jarussi was required to exhaust his administrative remedies by appealing the

7

board's decision to the county superintendent of schools before he could seek judicial relief in the courts. *Jarussi*, 204 Mont. at 135, 664 P.2d at 318. This Court held that Jarussi was not required to exhaust his administrative remedies because "the exhaustion doctrine does not apply to constitutional issues." *Jarussi*, 204 Mont. at 135, 664 P.2d at 318 (citations omitted). We noted Jarussi's suit was claiming a violation of his constitutional right to know and that "[c]onstitutional questions are properly decided by a judicial body, not an administrative official, under the constitutional principle of separation of powers." *Jarussi*, 204 Mont. at 135-36, 664 P.2d at 318.

¶17 The District Court found *Jarussi* to be "easily distinguishable" from the present case, because Qlarant was not challenging the constitutionality or validity of § 49-2-312, MCA, but merely arguing EO 14042 preempted the statute in the case of federal contractors in Qlarant's position and finding EO 14042 preempted § 49-2-312, MCA, would have no effect on the validity of the law as applied to any party not subject to EO 14042. Accordingly, the District Court found "[t]his matter does not require the Commission to determine the constitutionality of either the Montana statute or the executive order." We agree with the District Court.

¶18 To state the obvious, this matter does not involve a constitutional challenge to either the statute or the executive order at issue in this case. Qlarant is not contending that § 49-2-312, MCA, is unconstitutional, but instead asserting the statute was preempted by EO 14042 for a federal contractor such as itself. "Preemption can occur in three different ways: express, conflict, and field." *Reavis v. Pa. Higher Educ. Assistance Agency*,

8

2020 MT 181, ¶ 17, 400 Mont. 424, 467 P.3d 588 (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2275 (1990)).

> Express preemption applies when Congress clearly declares its intention to preempt state law through explicit statutory language.  Conflict preemption applies when there is an actual conflict between state and  federal law such that it is impossible to obey both or when state law stands as an obstacle to fully accomplishing the objectives of Congress.  Field preemption applies to only a few fields of law when federal law so thoroughly occupies a legislative field as to make it reasonable to infer Congress left no room for the states to act.

*Reavis*, ¶ 17 (citing *English*, 496 U.S. at 78-79, 110 S. Ct. at 2275) (internal citations omitted).

¶19   Preemption determinations naturally always begin with the Constitution.  The Supremacy Clause of the U.S. Constitution provides that "[the] Constitution, and the laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or laws of any state to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  To that end, the U.S. Supreme Court has occasionally described preemption determinations as following a two-step process: first, ascertaining the construction of the two laws, and second, determining the "constitutional question" of whether they are in conflict.  *Chi. & N. W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S. Ct. 1124, 1130 (1981) (citation omitted).  But here, the Hearing Officer, and later the District Court, reviewed the matter to determine whether EO 14042 expressly preempted § 49-2-312, MCA, and "[e]xpress preemption is a question of statutory interpretation."  *Reavis*, ¶ 19 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470,

484, 116 S. Ct. 2240, 2250 (1996)). In addition, conflict preemption is a question of law which may be addressed at the pleading stage. *Reavis*, ¶ 25.

¶20 The Hearing Officer was not presented with a challenge to the general validity of § 49-2-312, MCA, only an argument that EO 14042 preempted the statute in the present case. The Hearing Officer had no cause to determine the constitutionality of either EO 14042 or § 49-2-312, MCA. In such a situation, there is no need for *Kalo*'s proposed second step—the "constitutional question" is already answered by the Constitution itself. U.S. Const. art. VI, cl. 2. Executive branch agencies, such as the OAH and HRC, may clearly engage in statutory interpretation. *See, e.g., Core-Mark Int'l, Inc. v. Mont. Bd. of Livestock*, 2014 MT 197, ¶ 45, 376 Mont. 25, 329 P.3d 1278 (noting this Court provides "respectful consideration" of an administrative agency's interpretation of its statutory authority). And Montana's federal courts have determined an OAH hearing officer has the authority to engage in the preemption analysis at issue here. *BNSF Ry. Co. v. Swanson*, No. CV-23-43, 2024 U.S. Dist. LEXIS 234230, *9 (D. Mont. Dec. 30, 2024); *see also Cabela's Wholesale, LLC v. Chavez*, No. CV-23-41, 2024 U.S. Dist. LEXIS 112936, *13 (D. Mont. May 29, 2024) (magistrate's finding and recommendation determining "the Hearing Officer had the authority to make [the] determination" of whether OSHA's emergency temporary standard requiring large employers to develop, implement, and enforce a mandatory COVID-19 vaccination policy preempted § 49-2-312, MCA); *Cabela's Wholesale*, No. CV-23-41, 2024 U.S. Dist. LEXIS 111871, *1 (D. Mont. June 25, 2024) (adopting magistrate's findings and recommendations in full). Answering the question of whether EO 14042 preempted § 49-2-312, MCA, under the facts of this case is

10

not an example of the "[c]onstitutional questions" we have held may only be answered by a judicial body, *Jarussi*, 204 Mont. at 135-36, 664 P.2d at 318, and Qlarant's preemption argument could be addressed by an administrative official. Accordingly, the District Court did not err when it determined the Hearing Officer had authority to determine whether EO 14042 preempted § 49-2-312, MCA.

¶21 *2. Whether the District Court erred when it concluded the Hearing Officer correctly determined Executive Order 14042 preempted § 49-2-312, MCA, as to employers in Qlarant's position when Executive Order 14042 was in effect.*

¶22 Guthneck asserts the factual allegations of his claim are insufficient to establish either he and/or Qlarant were subject to EO 14042, that EO 14042 did not require Qlarant to terminate his employment, and that EO 14042 was an invalid exercise of power and therefore could not preempt § 49-2-312, MCA. Qlarant responds that the factual allegations of Guthneck's complaint were sufficient to show EO 14042 applied, that Qlarant was not required to reconcile the conflict between state and federal law by delaying Guthneck's firing, and that EO 14042 has received a mixed reception in the federal courts and Qlarant "was in no position to prejudge how courts would decide the legal challenges."

¶23 We are not persuaded by Guthneck's argument his own complaint did not allege sufficient facts to allow the Hearing Officer to address whether EO 14042 preempted § 49-2-312, MCA. An asserted claim is subject to dismissal if, as pled, it is insufficient to state a cognizable claim entitling the claimant to relief. M. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), the court must take all well-pled factual assertions as true and view them in the light most favorable to the claimant, drawing all reasonable inferences in favor of the claim." *Anderson v. ReconTrust Co., N.A.*, 2017 MT 313, ¶ 8, 390 Mont. 12, 407 P.3d 692.

11

Here, the allegations that Guthneck worked for Qlarant and that Qlarant implemented a vaccine mandate because it worked on federally funded contracts come straight from Guthneck's complaint. Taking those as true, it naturally follows that Qlarant was a federal contractor, or "covered contractor" in the parlance of the EO, and Guthneck was its federal contractor employee, or "covered contractor employee," for purposes of a preemption determination. While Qlarant proffered an affidavit attesting to those facts and a request to convert its motion to dismiss to a motion for summary judgment, the Hearing Officer declined to convert the motion and did not rely on Qlarant's additional information. Likewise, our determination comes from the facts as pled in Guthneck's complaint and we also do not rely on Qlarant's proffered additional information relating to Qlarant's status as a "covered contractor."

¶24 We are left, then, to determine whether the Hearing Officer (and the District Court) correctly determined EO 14042 preempted § 49-2-312, MCA, as applied to an employer working on federal contracts like Qlarant. We hold the Hearing Officer's determination EO 14042 preempted § 49-2-312, MCA, is correct.

¶25 EO 14042 was issued pursuant to President Biden's authority under the Procurement Act and carried the force of federal law. *Mayes v. Biden*, 67 F.4th 921, 942 (9th Cir. 2023), *vacated as moot* 89 F.4th 1186, 1188 (9th Cir. 2023). EO 14042 provided:

> Nothing in this order shall excuse noncompliance with any applicable State law or municipal ordinance establishing more protective safety protocols than those established under this order or with any more protective Federal law, regulation, or agency instructions for contractor or subcontractor employees working at a Federal building or a federally controlled workplace.

86 Fed. Reg. at 50,986. The September 24, 2021 Task Force Guidance, in effect when Guthneck was fired, specifically addressed how EO 14042 preempted state laws such as § 49-2-312, MCA:

> Q19: Does this clause apply in States or localities that seek to prohibit compliance with any of the workplace safety protocols set forth in this Guidance?
>
> A: Yes. These requirements are promulgated pursuant to Federal law and supersede any contrary State or local law or ordinance. Additionally, nothing in this Guidance shall excuse noncompliance with any applicable State law or municipal ordinance establishing more protective workplace safety protocols than those established under this Guidance.

¶26 EO 14042 imposed a vaccine mandate on federal contractors, while § 49-2-312, MCA, set forth that an employer could not condition a person's employment based on their vaccination status in the state of Montana. Section 49-2-312, MCA, was a "contrary State . . . law" which was expressly preempted by EO 14042 and the Task Force Guidance implementing the EO. For purposes of a preemption analysis, the EO and Task Force guidance stating EO 14042 supersedes any contrary state laws "end[s] our inquiry." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 591, 107 S. Ct. 1419, 1430 (1987). EO 14042 expressly preempted § 49-2-312, MCA, when applied to federal contractors subject to the EO, such as Qlarant. Our conclusion is consistent with that of the federal courts which have addressed the issue. In the United States District Court for the District of Montana, the federal district court found that "EO 14042 expressly preempted" § 49-2-312, MCA. *Swanson*, No. CV-23-43, 2024 U.S. Dist. LEXIS 234230, *13 (D. Mont. Dec. 30, 2024); *see similarly Cabela's Wholesale*, No. CV-23-41, 2024 U.S. Dist. LEXIS 112936, *13 (D. Mont. May 29, 2024) (magistrate's finding and recommendation

13

determining OSHA's similar emergency temporary standard requiring large employers to develop, implement, and enforce a mandatory COVID-19 vaccination policy "expressly and impliedly preempted Mont. Code Ann. § 49-2-312 during the relevant period"); *Cabela's Wholesale*, No. CV-23-41, 2024 U.S. Dist. LEXIS 111871, *1 (D. Mont. June 25, 2024) (adopting magistrate's findings and recommendations in full). Because we hold EO 14042 expressly preempted § 49-2-312, MCA, in this case, it is unnecessary to also address any conflict or implied preemption arguments.

¶27    EO 14042 and the September 24, 2021 Task Force Guidance were the law of the land when Qlarant issued its vaccination policy on October 6, 2021, and were still in effect when Guthneck was terminated for refusing to disclose his vaccination status on November 4, 2021, and filed his discrimination complaint that same day. "[S]ubstantive rights between parties to an action are determined by the law in effect on the date of the injury." *Anderson v. Werner Enters., Inc.*, 1998 MT 333, ¶ 28, 292 Mont. 284, 972 P.2d 806 (citing *Cadwell v. Bechtel Power Corp.*, 225 Mont. 423, 425, 732 P.2d 1352, 1354 (1987)). The date of the injury here is November 4, 2021, when Guthneck was fired and filed his discrimination complaint. While Guthneck claims Qlarant could have simply waited even longer—after he had repeatedly refused to disclose his vaccination status—and still been in compliance with EO 14042, Qlarant was required to comply with the law in effect at the time.[2]  EO 14042 set a deadline for covered employers to comply with its vaccination

_____

[2] Guthneck points to several actions taken either by various federal courts or the Task Force after November 4, 2021, as reasons for why Qlarant did not need to terminate him on November 4, 2021. As part of this argument, Guthneck includes a copy of the FAQ section from the Task Force website, taken from no earlier than October 19, 2022, and asserts the guidance was for contractors

14

mandate, it did not preclude those employers from implementing their own vaccination mandates ensuring compliance prior to the deadline. And for good reason, as it was the employers which needed to ensure compliance by the deadline—which required drafting and distributing their own policies, obtaining the required proof of vaccination from its employees, receiving and either approving or rejecting accommodation requests, among other things, and ensuring the federal government had all this information by the deadline. Qlarant was not required to somehow accomplish all of this on exactly December 8, 2021, and no earlier. EO 14042 was in effect during the October 6-November 4, 2021 time period and Qlarant was required to follow its mandates. After being given several opportunities to comply with Qlarant's vaccine mandate, Guthneck simply refused and was accordingly terminated. The later extensions of the contractor compliance deadlines are not relevant to Guthneck's claim he was discriminated against by being fired on November 4, 2021. *Anderson*, ¶ 28.

¶28     Finally, Guthneck asserts EO 14042 was an invalid exercise of power and therefore unenforceable. Again, Qlarant was required to follow federal law in effect on November 4, 2021. At that time, no injunction barring EO 14042's enforcement existed and Qlarant was in no position to prejudge the constitutionality of EO 14042. Federal courts have since come to opposite conclusions on the constitutionality of EO 14042. *Compare, e.g., Georgia v. President of the United States*, 46 F.4th 1283, 1301 (11th Cir. 2022) (finding

---

to utilize an escalating enforcement policy which encouraged compliance and only removed employees "after continued noncompliance." This portion of Task Force guidance did not exist on November 4, 2021, and is irrelevant to the present case.

plaintiff states likely to succeed on their claim EO 14042 exceeded the President's authority under the Procurement Act), *with Mayes*, 67 F.4th at 942 (finding EO 14042 was a valid exercise of the President's authority under the Procurement Act). And EO 14042 was rescinded by President Biden when he issued EO 14099 on May 9, 2023. Moving Beyond COVID-19 Vaccination Requirements for Federal Workers, 88 Fed. Reg. 30,891 (May 15, 2023). Because EO 14042 has been rescinded, cases based on the contractor vaccine mandate have uniformly been dismissed as moot. *Mayes*, 89 F.4th at 1188 (collecting cases).

## CONCLUSION

¶29 The District Court correctly granted Qlarant's petition for judicial review. The OAH Hearing Officer had authority to determine the preemption question as it was a matter of statutory interpretation, and the Hearing Officer correctly determined EO 14042 expressly preempted § 49-2-312, MCA, as to employers in Qlarant's position while EO 14042 was in effect.

¶30 Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LUKE BERGER
District Court Judge Luke Berger,
sitting in for Justice Jim Rice

Justice James Jeremiah Shea concurring.

¶31 I concur with the Court's decision and write separately only to emphasize that nothing in the Opinion permits an employer to set a deadline for an employee to take some action and then move the goalposts and fire that employee for failing to meet a shifting deadline. We generally "review on appeal only those issues raised by the parties." *Hager v. J.C. Billion, Inc.*, 2008 MT 167, ¶ 19, 343 Mont. 353, 184 P.3d 340. Guthneck neither raised nor developed an argument that his discharge was wrongful because Qlarant fired him on November 4, 2021, after telling him that he had until November 24, 2021, to submit proof of his vaccination. That is a case for another day which, in my view, may compel an entirely different result.

/S/ JAMES JEREMIAH SHEA